OPINION
Defendant-appellant, Kim Gerrard, appeals her conviction, rendered in the Mason Municipal Court, for driving under the influence of alcohol, R.C. 4511.19(A)(3).[1] We affirm the decision of the trial court.
On April 26, 1997, at approximately 3:05 a.m., Warren County Deputy Sheriff Troy Black was on duty in Deerfield Township, driving eastbound "at U.S. 22 and 3." Black observed appellant driving on U.S. 22. Appellant swerved both left and right of the center lane line and was "jerking back" into her lane in an "erratic motion." Based on his observations, Black stopped appellant's vehicle.
When Black approached appellant in her vehicle, he noticed a strong odor of alcohol. Black requested appellant perform field sobriety tests and appellant performed poorly on four separate tests. Black arrested appellant for driving under the influence of alcohol, R.C. 4511.19(A)(1).[2] At about 4:15 a.m., appellant was given a breathalyzer test and registered .144 grams of alcohol per two hundred ten liters of breath. A citation was issued by Black charging appellant with violations of R.C.4511.19(A)(1) and R.C. 4511.19(A)(3).
On May 16, 1997, appellant filed a motion to suppress. After a June 10, 1997 hearing, the trial court overruled the motion. On September 9, 1997, appellant plead no contest to driving under the influence of alcohol, R.C. 4511.19(A)(3). Appellant filed a timely notice of appeal and provides a single assignment of error for our review:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HER MOTION TO SUPPRESS.
Specifically, appellant contends (1) Black lacked reasonable suspicion for the traffic stop; (2) the state failed to maintain breathalyzer test and maintenance results for at least three years; (3) the police failed to test the three required bands for radio frequency interference of the breathalyzer; (4) a radio frequency interference check of the breathalyzer was not completed every seven days; and (5) the breathalyzer calibration was not within +/- .005 of the "target value" of the calibration solution. We address each argument separately.
When deciding a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. A ruling by the trial court will not be disturbed on appeal if it is supported by substantial and credible evidence. State v. Williams (1993), 86 Ohio App.3d 37,41. The court of appeals will independently determine if the minimum constitutional standards are met. Id. With these standards of review in mind, we consider the merits of appellant's arguments.
When a police officer makes an investigatory stop of a vehicle, the officer must have a reasonable and articulable suspicion that criminal activity is occurring. Delaware v. Prouse (1979),440 U.S. 648, 661, 99 S.Ct. 1391, 1400. The officer must have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868,1880. The constitutionality of the stop must be viewed in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 178, certiorari denied, 488 U.S. 910,109 S.Ct. 264. The facts must be viewed from the perspective of a reasonable officer at the scene. State v. Andrews (1991), 57 Ohio St.3d 86,87, certiorari denied, 501 U.S. 1220, 111 S.Ct. 2833. An investigative stop "based on probable cause that a traffic violation has occurred or was occurring, * * * is not unreasonable under the Fourth Amendment." Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. See, also State v. Wilhelm (1998), 81 Ohio St.3d 444.
In this case, appellant swerved left and right of the center lane line and "jerked back" the vehicle in an "erratic manner." These facts demonstrate probable cause to believe that a traffic offense, a marked lane violation, was being committed, justifying the investigatory stop.[3] Erickson at syllabus.
Appellant next argues that the state failed to substantially comply with the Ohio Department of Health ("ODOH") regulation requiring breathalyzer test and maintenance records to be retained for at least three years. We disagree. Ohio Adm. Code3701-53-04(E) states that "[r]esults of instrument checks, and records of maintenance and repairs shall be retained, in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code." Ohio Adm. Code 3701-53-01(A) states in relevant part that "[t]he results of the tests shall be retained for not less than three years." At the motion to suppress, the testimony indicated the Warren County Sheriff's Office kept these records for two years.
When a defendant files a motion to suppress, the state is, at a minimm, required to show substantial compliance with ODOH regulations. State v. Plummer (1986), 22 Ohio St.3d 292, 294. Absent a showing by the defendant of prejudice, strict or technical compliance with these regulations is not always required. Id. at 295. In this case, the state failed to strictly comply by retaining records for only two years. However, as explained more fully below, substantial compliance on this issue meets the Plummer test and appellant has not shown any prejudice.
In our view, breathalyzer calibration or maintenance records more than two years old are not integral to evaluating the veracity of the breathalyzer result. Appellant cites two case from our sister districts in which the state failed to substantially comply with the three year retention regulation. See State v. Hominsky (1995), 107 Ohio App.3d 787, 796; State v. Griffith (Sept. 21, 1988), Summit App. No. 13551, unreported, at 5. But, see, State v. Williams (Apr. 7, 1998), Franklin App. No. 97APC09-1141, unreported, at 6-7. However, in Griffith and Hominsky, the state only kept records of successful calibration checks and not the failed checks, thereby demonstrating prejudice. Many of the missing records may have been close in time to the actual breathalyzer test. By contrast, in this case, appellant had two complete years of retained records to evaluate the operation of the breathalyzer.
The facts in this case are analogous to State v. Curry (Sept. 5, 1989), Butler App. No. CA89-02-032, unreported. In Curry, the state failed to strictly comply with Ohio Adm. Code3701-53-01(B)-(1), by failing to keep a manufacturer's operational manual with the breathalyzer. Id. at 8. However, the police had an instruction manual from the ODOH. Id. In both Curry and the particular facts of the case sub judice, the failure of the state to strictly comply with an ODOH regulation is not fundamental to the integrity of the breathalyzer's accuracy.[4]
Therefore, based on these facts, we find substantial compliance with the three-year retention regulation in Ohio Adm. Code3701-53-01(A).
Appellant next argues that the state failed to demonstrate the police conducted the radio frequency interference test on all three requisite bands, high frequency, very high frequency and ultra high frequency. This court has held that police must test all three bands to substantially comply with ODOH regulations. State v. Massie (Apr. 11, 1994), Clinton App. Nos. CA93-07-018, 019, 020, 021, unreported, at 3. Deputy Sheriff W. R. Pogue clearly testified that he tested "a frequency representative of each band" and described the different "high" and "low" bands used by the police in Warren County and the Ohio Highway Patrol. We conclude Pogue's testimony demonstrated full compliance with Ohio Adm. Code 3701-53-02(C).
Next, appellant argues the police failed to comply with Ohio Adm. Code 3701-53-04(A), which states that, "[a] senior operator shall perform an instrument check on approved evidential breath testing equipments and a radio interference (RFI) check no less frequently than once every seven days * * *." Appellant concedes the check before appellant's breathalyzer test was completed within the seven day rule. However, the RFI test after appellant's breathalyzer was completed eight days later. We have previously held that a post-test calibration conducted more than seven days after a defendant's test is not error. State v. Vannatter (Apr. 13, 1998), Clermont App. No. CA97-08-072, unreported, at 6. The reasoning is only pre-test calibration results are needed to ensure the accuracy of a breathalyzer test. Pioneer v. Martin (1984), 16 Ohio App.3d 478, 479. The same logic equally applies to a post-test RFI check. Therefore, the post-test RFI check is not relevant to the instant case and the state has complied with Ohio Adm. Code 3701-53-04(A).
Finally, appellant avers the calibration check of the breathalyzer failed to comply with Ohio Adm. Code 3701-53-04(A)(1), which states that "[a]n instrument check is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution." State exhibit five listed a target value of 100 for the calibration solution and a test result of .103. When testifying, Pogue stated that "the target value is 100." It is patently obvious Pogue meant .100 rather than 100 and the calibration was within +/- .005 of the target value. Appellant cites State v. Brown (1996), 109 Ohio App.3d 629, where the court affirmed a suppression of a breathalyzer test because the target value was listed as .10 instead of .100. In Brown, the target value could have been .101 or higher. In this case, there is no reasonable concern the target value was 100, rather than .100.
Accordingly, the sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] R.C. 4511.19(A)(3) states that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply: * * * The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath[.]"
[2] R.C. 4511.19(A)(1) states that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply: The person is under the influence of alcohol * * *."
[3] Appellant was cited for a marked lane violation, but the charge was dismissed by the state.
[4] By contrast, in radio frequency interference cases, this court has held the police must test all three bands. See, e.g., State v. Massie (Apr. 11, 1994), Clinton App. Nos. CA93-07-018, 019, 020, 021, unreported, at 3. We reasoned that "[b]y not testing all bands, interference could occur and go undetected, causing the test results to be inaccurate." Id. at 2, citing State v. Ray (Nov. 27, 1990), Clark App. No. 2657, unreported, at 8.